MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 75
Docket:        Han-23-421
Argued:        September 11, 2024
Decided:       July 30, 2026
Panel:         STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.*

# STATE OF MAINE

v.

# JEFFERY A. WITHAM JR.

LAWRENCE, J.

[¶1]  Jeffery A. Witham Jr. appeals from judgments of conviction entered by the trial court (Hancock County, *Larson, J.*) in two separate matters.  In one matter, Witham was convicted following a jury trial of ten counts, with a lead count of domestic violence aggravated assault with a dangerous weapon (Class A), 17-A M.R.S. § 208-D(1)(D) (2020).[1]  In the other matter, Witham entered a conditional guilty plea to one count of tampering with a witness (Class B), 17-A M.R.S. § 454(1-B)(A)(2) (2026).  The court sentenced Witham to concurrent terms totaling twenty-four years of incarceration, with all but twenty-two years suspended, and six years of probation.  Witham contends that

---

*  Although Justice Horton participated in the appeal, he retired before this opinion was certified.

[1]  This statute has since been amended but not in any way that affects this appeal.  *See, e.g.*, P.L. 2023, ch. 465, § 4 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 208-D(1)(D) (2026)).

- the court erred as a matter of law in a third, unrelated criminal matter when it twice denied him an evidentiary hearing to litigate whether $24,719 of his funds seized were sufficiently connected to the criminal offense charged in that matter, and specifically that the court violated his Sixth and Fourteenth Amendment rights to counsel of his choosing and due process by violating 15 M.R.S. § 5828(1)(E)(1) (2026), which requires a court to order the return of invalidly-seized assets;

- the trial court erred by not giving a specific-unanimity jury instruction and by denying his post-judgment motion for a mental-condition examination; and

- the sentencing court unlawfully increased his sentence based on

    - a conclusion that there were firearms involved in the convicted offenses, despite the jury finding that none of the offenses were committed with the use of a firearm;

    - the consideration of Witham's age at the time of the offense; and

    - its assessment that Witham had not accepted responsibility for his conduct.

[¶2] We also conclude that we do not have jurisdiction over the motions regarding the seized funds because the forfeiture occurred in a matter not related to the present appeal, and we therefore do not reach the merits of the forfeiture argument. We conclude that

- no specific-unanimity instruction was needed on Counts 1, 2, 5, 8, 11, 13, and 15;

- the court did not err by denying Witham's post-judgment motion for a mental-condition examination;

- the court did not err by concluding at sentencing that there were firearms involved in the convicted offenses, by considering Witham's age at the time of the offense for sentencing purposes, or by considering Witham's lack of acceptance of responsibility as an aggravating factor; and

- Counts 1 and 6 should have been merged and Counts 5 and 11 also should have been merged. *See infra* ¶¶ 28, 39.

Therefore, we affirm the judgment of conviction but vacate the sentence as to Counts 1, 5, 6, and 11 and remand the matter for resentencing following merger of those counts as noted.

## I. BACKGROUND

### A. Domestic-Violence Case

[¶3] We first describe the case involving the charges of domestic violence. Viewing the evidence in the light most favorable to the State, the trial record supports the following facts. *State v. Hanscom*, 2016 ME 184, ¶ 3, 152 A.3d 632.

[¶4] In June 2020, Witham was living with the victim and the victim's six-year-old child in Witham's home in Hancock County. Witham and the victim had been in a romantic relationship for around four years. On the morning of June 24, 2020, Witham's dog ran away from the home, and Witham became angry and yelled at the victim. Witham was also angry that the victim had not

4

completed a loan application and that the victim's child had told someone that Witham's dog bit the child. Witham told the victim to leave but before she could do so, he assaulted her numerous times.

[¶5] Witham assaulted the victim by throwing her against a bureau and bashing her head on a mirror; strangling her approximately four times, twice while she was holding the child; jamming a baseball bat against the victim's neck; punching the victim in the face with a closed fist; and smashing a calamine lotion bottle into the victim's forehead with such force that the words "open" and "close" were imprinted on her skin. Prior to these events, Witham had hit the victim once before.

[¶6] In a matter with docket number HANCD-CR-2020-618, Witham was charged by indictment on June 25, 2020, with eighteen criminal offenses:

- Count 1: Kidnapping with a dangerous weapon (Class A), 17-A M.R.S. § 301(1)(A)(4) (2020);[2] 17-A M.R.S. § 1604(3) (2026); 17-A M.R.S. § 1604(5)(A)-(B) (2020),[3] against the victim, having been previously convicted of domestic violence criminal threatening in two prior cases and domestic violence assault in one prior case;

- Count 2: Kidnapping (Class A), 17-A M.R.S. §§ 301(1)(A)(4), 1604(5)(B), against the victim's child, having the same prior convictions;

---

[2] This statute has since been amended but not in any way that affects this appeal. *See* P.L. 2021, ch. 299, § B-1 (effective Oct. 18, 2021) (codified at 17-A M.R.S. § 301(1)(A)(4) (2026)).

[3] Section 1604(5)(B) has since been amended but not in any way that affects this appeal. *See, e.g.*, P.L. 2023, ch. 557, § 4 (effective Aug. 9, 2024) (codified at 17-A M.R.S. § 1604(5)(B) (2026)).

- Counts 3 & 4: Kidnapping with a dangerous weapon (Class A), 17-A M.R.S. §§ 301(1)(A)(4), 1604(3), (5)(A)-(B), against the victim and the victim's child respectively, having the same prior convictions;

- Count 5: Domestic violence aggravated assault (Class A), 17-A M.R.S. §§ 208-D(1)(D), 1604(5)(B), against the victim, having the same prior convictions;

- Counts 6 & 7: Criminal restraint with a dangerous weapon (Classes B & A), 17-A M.R.S. § 302(1)(B)(1), (2) (2026); 17-A M.R.S. § 1604(3), (5)(A)-(B), against the victim and the victim's child respectively, having the same prior convictions;

- Count 8: Domestic violence criminal threatening with a dangerous weapon (Class B), 17-A M.R.S. § 209-A(1)(B)(1) (2020);[4] 17-A M.R.S. § 1604(5)(A) against the victim, having the same prior convictions;

- Counts 9 & 10: Domestic violence terrorizing with a dangerous weapon (Class B), 17-A M.R.S. § 210-B(1)(B)(1) (2020);[5] 17-A M.R.S. §§ 1604(5)(A), having the same prior convictions;

- Counts 11 & 12: Domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1) (2020),[6] against the victim and the victim's child respectively, having the same prior convictions;

- Count 13: Possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(A-1)(1) (2020),[7] having the same prior convictions;

---

[4] This statute has since been amended but not in any way that affects this appeal. *See, e.g.*, P.L. 2023, ch. 465, § 8 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 209-A(1)(B)(1) (2026)).

[5] This statute has since been amended but not in any way that affects this appeal. *See, e.g.*, P.L. 2023, ch. 465, § 10 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 210-B(1)(B)(1) (2026)).

[6] This statute has since been amended but not in any way that affects this appeal. *See, e.g.*, P.L. 2023, ch. 465, §§ 2, 3 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 207-A(1)(B)(1) (2026)).

[7] This statute has since been amended but not in any way that affects this appeal. *See* P.L. 2023, ch. 491, § 1 (effective Aug. 9, 2024) (codified at 15 M.R.S. § 393(1)(A-1)(1) (2026)). Witham stipulated that he was a "prohibited person" who was not allowed to possess firearms pursuant to 15 M.R.S. § 393(1)(A-1)(1).

- Count 14: Criminal simulation (Class C), 17-A M.R.S. § 705(1)(E)(2) (2026);

- Count 15: Endangering the welfare of a child with the use of a dangerous weapon (Class C), 17-A M.R.S. § 554(1)(C) (2026); 17-A M.R.S. §§ 1604(3), (5)(A), against the victim's child;

- Count 16: Obstructing report of crime or injury (Class D), 17-A M.R.S. § 758(1)(A) (2026);

- Count 17: Criminal mischief (Class D), 17-A M.R.S. § 806(1)(A) (2026); and

- Count 18: Violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2026).

[¶7] On January 13, 2023, despite being represented by counsel, Witham personally wrote a letter to the court titled "Motion for Dismissal," asserting that his due process rights and right to counsel had been violated because "the government seiz[ed] $24,719"[8] that he needed to pay for an attorney of his

---

[8] Witham's funds were seized in a separate case, docket number HANCD-CR-2022-00196, unrelated to the cases subject to this appeal, in which the grand jury indicted Witham with three counts of trafficking in scheduled drugs (Classes A and B), 17-A M.R.S. §§ 1103, 1105-A (2022); and two counts of criminal forfeiture, 15 M.R.S. § 5826 (2022). Title 17-A M.R.S. § 1103 has since been amended but not in any way that affects this appeal. *See* P.L. 2025, ch. 173 § 4 (effective Sep. 24, 2025) (codified at 17-A M.R.S. § 1103 (2026)). Title 17-A M.R.S. § 1105-A has since been amended but not in any way that affects this appeal. *See* P.L. 2025, ch. 173, § 6 (effective Sep. 25, 2025) (codified at 17-A M.R.S. § 1105-A (2026)). Title 15 M.R.S. § 5826 has since been amended but not in any way that affects this appeal. *See* P.L. 2023, ch. 196, § 1 (effective Oct. 25, 2023) (codified at 15 M.R.S. § 5826 (2026)).

The State seized $24,719 from Witham on March 9, 2022. *See* 15 M.R.S. §§ 5821(6) (2026); *id.* § 5826(2). This case had not yet gone to trial as of June 18, 2026, because the trial court stayed the proceedings pending this appeal.

choosing and requesting that his funds be returned. *See* U.S. Const. amends. VI, XIV; M.R.U. Crim. P. 41(j) ("A person aggrieved by an unlawful seizure of property may file a motion in the Unified Criminal Docket for the return of the property on the ground that it was illegally seized."). At a hearing on Witham's motion on January 18, 2023, at which he was represented by counsel, he requested an evidentiary hearing to address the asset forfeiture. The court (*R. Murray, J.*) denied his request.

[¶8] The court (*Larson, J.*) held a jury trial from August 14 to 16, 2023, on Counts 1 through 17.[9] The victim, the victim's child, and three officers from the Hancock County Sheriff's Office testified in the State's case-in-chief. At the close of the State's case-in-chief, Witham moved for a judgment of acquittal, specifically arguing for acquittal on the kidnapping charges. The State opposed the motion but conceded that it had not met its burden to prove Count 14, criminal simulation. The court entered a judgment of acquittal as to Count 14 and denied Witham's motion as to all other counts. Witham then put on his case, calling two friends as witnesses and testifying on his own behalf.[10] After

---

[9] Witham elected to have Count 18 tried by the court, not the jury.

[10] After Witham presented his case, he renewed his motion for judgment of acquittal as to the remaining counts, which the court again denied.

8

the defense rested, and at the behest of the State, the court dismissed Counts 9 and 10, domestic terrorizing.[11]  The court then gave extensive jury instructions.

[¶9]  The jury returned a guilty verdict on Count 1, kidnapping with a dangerous weapon; Count 2, kidnapping; Count 5, aggravated assault; Count 6, criminal restraint with a dangerous weapon; Count 8, domestic violence criminal threatening with a dangerous weapon; Count 11, domestic violence assault; Count 13, possession of a firearm by a prohibited person; Count 15, endangering the welfare of a child with the use of a dangerous weapon; and Count 17, criminal mischief.  The jury was given a special verdict form and separately reported that it did not find beyond a reasonable doubt that the dangerous weapon used in Counts 1, 6, 8, and 15 was a firearm.  The jury deadlocked on Count 16, obstructing report of crime or injury, and the State subsequently dismissed that count.  The court found Witham guilty on Count 18, violation of condition of release.

[¶10]  In a letter dated August 28, 2023, and a motion filed on September 1, 2023, Witham moved for a new trial and to vacate the judgment of conviction, again arguing that, because his assets were seized and he could

---

[11]  The State noted that, following the United States Supreme Court's decision in *Counterman v. Colorado*, 600 U.S. 66 (2023), the Maine Attorney General instructed district attorneys to dismiss all terrorizing cases.

not afford the attorney of his choosing, his Sixth and Fourteenth Amendment rights were violated. Following a hearing on September 22, 2023, the court denied the motions, finding that "there had already been a hearing [on January 18, 2023] on that motion for having the funds returned, and that motion was denied by Justice Murray. . . . There was a hearing and it was determined by the—Justice Murray that those funds would be drug proceeds."

[¶11] On August 29, 2023, Witham requested that the court order a mental-condition examination pursuant to 15 M.R.S. § 101-D(3) (2026). The court held a hearing on September 22, 2023, on this and other post-trial issues,[12] at which Witham stated that his intent was to use the information documented in the mental-condition examination at sentencing. The court denied the request.

## B. Witness-Tampering Case

[¶12] We turn to a description of the case involving the charges related to tampering with a witness. Witham was charged by indictment on October 9, 2020, in a matter with docket number HANCD-CR-2020-816, with

---

[12] At the September 22 hearing, the court considered Witham's motion for a new trial, taking into account his arguments on issues regarding motions not heard, duplicative charges, enhancements, his right to a speedy trial, and the use of a dangerous weapon. The court concluded that Counts 5 and 11 were duplicative, the law of merger applied, and Count 11 merged into Count 5 and therefore Witham would be sentenced only on Count 5. The court also concluded that there was sufficient evidence from which the jury could have found that a dangerous weapon, other than a firearm, was used in the commission of Counts 1, 6, 8, and 15.

two counts of tampering with a witness, informant, juror, or victim (Class B) (Counts 1 & 2), 17-A M.R.S. § 454(1-B)(A)(2), (B)(1) (2026); two counts of tampering with a witness, informant, juror, or victim (Class C) (Counts 3 & 4), 17-A M.R.S. § 454(1)(A)(2), (B)(1); and one count of violation of condition of release (Class C) (Count 5), 15 M.R.S. § 1092(1)(B) (2020).[13]  He entered a conditional guilty plea to Counts 1 and 5[14] on July 22, 2022,[15] and his sentencing was continued to occur contemporaneously with sentencing in the domestic-violence case, docket number HANCD-CR-2020-618.

## C.    Sentencing

[¶13]  On October 6, 2023, the court held a sentencing hearing in docket number HANCD-CR-2020-618 on Counts 1, 2, 5, 6, 8, 11, 13, 15, 17, and 18; and in docket number HANCD-CR-2020-816 on Counts 1 and 5.  At sentencing, the court heard from the child's father through the child's stepmother, the victim

---

[13]  This statute has since been amended but not in any way that affects this appeal.  *See* P.L. 2023, ch. 293, § 1 (effective Oct. 25, 2023) (codified at 15 M.R.S. § 1092(1)(B) (2026)).

[14]  Counts 2, 3, and 4 were dismissed as a part of the conditional-plea agreement.  Witham agreed to a sentence concurrent with the pending domestic-violence case that would be capped at the maximum sentence in the domestic-violence case.  The parties agreed that should Witham be acquitted of all charges in the domestic-violence case or the case be dismissed, the State would recommend a time-served sentence.  Witham was not acquitted of all charges, and the case was not dismissed.

[15]  Although the docket record shows the conviction as being entered on July 22, 2022, it was not a final judgment of conviction until after the sentence was imposed on October 6, 2023.  The docket record should be corrected on remand.

through a domestic-violence advocate, the child through the child's clinician, and the child's clinician herself. The court also considered the State's and Witham's sentencing memoranda. The court began by identifying the charge of aggravated assault, Count 5, as the controlling offense and proceeded to focus its *Hewey* analysis[16] on that charge. In the first step of its analysis, the court considered the nature and seriousness of the offense and found that there were firearms involved over the course of the incident even though the jury was not persuaded that a firearm was the dangerous weapon used in Counts 1, 6, 8, and 15. The court concluded that the basic sentence was eighteen years. In the second step of its analysis, the court determined the maximum term of imprisonment by considering aggravating and mitigating factors. The court found as aggravating factors Witham's criminal history, the impact on the victim, Witham's age (he was forty-four years old at the time of the offenses), his lack of acceptance of responsibility, and his continued criminal conduct during the pendency of the domestic-violence case. After considering the mitigating factors of Witham's active involvement in treatment and his strong

---

[16] The court conducted the three-step process prescribed by 17-A M.R.S. § 1602 (2023) for the sentencing on Class A, B, and C crimes. This is also known as the *Hewey* analysis. *See State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993). Section 1602 has since been amended, but not in any way that affects this appeal. *See, e.g.*, P.L. 2025, c. 420, § 1 (effective Sep. 24, 2025) (codified at 17-A M.R.S. § 1602 (2026)).

12

employment history, the court found that the aggravating factors outweighed the mitigating factors and concluded that Witham's final sentence for the controlling offense was twenty-four years of incarceration, with all but twenty-two years suspended, and six years of probation.[17]

## D.    Appeal

[¶14]  Witham timely appealed from his judgments of conviction and applied to appeal his sentence.  15 M.R.S. § 2151 (2026); M.R. App. P. 2B(b)(1). On November 1, 2023, we consolidated Witham's appeals from his judgments of conviction, separately consolidated his applications to appeal his sentence, and retroactively permitted the trial court to dismiss Count 5 in the

---

[17]  In docket number HANCD-CR-2020-618, Witham was also sentenced to the following terms of incarceration, all running concurrently with the sentence on Count 5:

- Count 1, kidnapping with a dangerous weapon (Class A): eight years;
- Count 2, kidnapping (Class A): eight years;
- Count 6, criminal restraint with a dangerous weapon (Class B): five years;
- Count 8, domestic violence criminal threatening with a dangerous weapon (Class B): eight years;
- Count 11 domestic violence assault (Class C): five years;
- Count 13, possession of a firearm by a prohibited person (Class C): five years;
- Count 15, endangering the welfare of a child with the use of a dangerous weapon (Class C): five years;
- Count 17, criminal mischief (Class D): 364 days; and
- Count 18, violation of condition of release (Class E): six months.

As we discuss below, *see infra* ¶ 39, although the sentencing court merged Counts 5 and 11 at the September 22, 2023, hearing, it did not merge the counts at sentencing nor was the merger reflected in the judgment and commitment.

witness-tampering case, docket number HANCD-CR-2020-00816.[18]     The

Sentence Review Panel authorized the appeal of Witham's sentence, which was

considered as part of Witham's appeal.  M.R. App. P. 20(g), (h).

## II.  DISCUSSION

### A.     Forfeiture

[¶15]  Witham contends that the court erred as a matter of law when it

twice denied him an evidentiary hearing to litigate whether his funds seized in

an unrelated criminal proceeding were sufficiently connected to that criminal

offense to permit a potential forfeiture.  Witham claims that the court violated

his Sixth and Fourteenth Amendment rights to counsel of his choosing and due

process, citing *Luis v. United States*, 578 U.S. 5, 22 (2016),[19] and in doing so, also

violated 15 M.R.S. § 5828(1)(E)(1), which requires a court to order the return

of invalidly seized assets.  *See* U.S. Const. amend. VI ("In all criminal

prosecutions, the accused shall enjoy the right . . . to have the Assistance of

---

[18]  In docket number HANCD-CR-2020-816, Witham was sentenced to eight years on Count 1, tampering with a witness, informant, juror, or victim (Class B), to run concurrently with the twenty-four-year sentence imposed on Count 5 in the domestic-violence case.  The court inadvertently failed to sentence Witham on Count 5 in the witness-tampering case, violation of condition of release (Class C), which has now been retroactively dismissed.

[19]  Witham did not assert a claim under the Maine Constitution in the trial court or on appeal, and we therefore deem any state constitutional claims waived.  *See State v. Tripp*, 2024 ME 12, ¶ 20 n.9, 314 A.3d 101 (noting that the defendant failed to develop an argument on appeal based on the Maine Constitution and therefore waived any state constitutional claims).

14

Counsel for his defence."); U.S. Const. amend. XIV ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."). Witham contends that the court's error was structural and therefore the remedy is a new trial.

[¶16]  The State argues that this issue is not properly before us because the seizure occurred in an unrelated criminal docket.[20]  In response, Witham states that his motion to return seized funds was filed in four separate dockets, including the drug-case docket, and that the relevant State's attorneys were present for the argument to the court about whether Witham was entitled to an evidentiary hearing.

[¶17]  We first consider whether we have jurisdiction to consider Witham's claim that the court erred as a matter of law by denying his requests for an evidentiary hearing on whether his funds were unlawfully seized.  As noted above, the appeal before us is of Witham's convictions in docket number HANCD-CR-2020-618 for domestic violence occurring in June 2020, and docket number HANCD-CR-2020-816 for witness tampering occurring in October 2020.  The funds in question were seized from Witham almost two years after the events at issue in this appeal, in connection with his charges in an entirely

---

[20]  The State raised additional arguments that need not be addressed in light of our jurisdictional ruling.

different case involving drug trafficking, docket number HANCD-CR-2022-00196. That matter remains open at the trial level and nothing relating to that docket is before us. *See supra* n.8.

[¶18] Contrary to Witham's argument, he has no constitutional right to a pre-trial hearing regarding the seized funds when, as here, he has been indicted for drug-trafficking offenses and forfeiture. The grand jury in the drug-trafficking case found probable cause to believe that he committed the offenses, and in that instance has also found probable cause to believe that the funds should be forfeited. That is all the federal constitution requires, even if the seizure of the funds impairs the defendant's ability to hire counsel. *Kaley v. United States*, 571 U.S. 320, 333 (2014); *see United States v. Monsanto*, 491 U.S. 600, 615-16 (1989).

[¶19] The forfeiture statute sets forth the process to determine the validity of the seizure and forfeiture of assets. Section 5821 of Title 15 provides for the forfeiture of "all money . . . furnished or intended to be furnished by any person in exchange for a scheduled drug in violation of Title 17-A, chapter 45 [Maine's criminal drug laws]; all proceeds traceable to such an exchange; and all money . . . used or intended to be used to facilitate any violation of Title 17-A, chapter 45." 15 M.R.S. § 5821(6) (2026). Property subject to forfeiture under

16

section 5821 may be proceeded against by indictment or criminal complaint in the related criminal proceeding. 15 M.R.S. § 5826(2) (2026). That is what happened here: the forfeiture count was charged in the same indictment as the drug-trafficking charges. Section 5826(4) provides that "[t]rial against property charged by indictment . . . *must* be held in a single proceeding together with the trial of the related criminal violation." (Emphasis added.) Under section 5826(4), therefore, the trial court here did not have jurisdiction to determine whether the forfeiture was valid.

[¶20] Witham claims that, notwithstanding section 5826(4), he is entitled to a pretrial hearing under section 5828. We disagree. Section 5828 provides for a prompt hearing, separate from the trial on the indictment, only for "assets seized pursuant to [chapter 517 of Title 15]." 15 M.R.S. § 5828(1). Aside from the fact that such a proceeding would still be separate from the criminal charges in this case, that provision does not apply to the seizure about which Witham complains. Instead, the process outlined in section 5828 applies only when assets are seized pursuant to the process authorized in 15 M.R.S. § 5822 (2026),[21] and there is no indication that is what occurred here.

---

[21] Section 5822(6) permits any jurist to "issue, at the request of the attorney for the State, ex parte, any preliminary order or process as is necessary to seize or secure the property for which forfeiture is or will be sought and to provide for its custody. That order may include an order to a financial institution or to any fiduciary or bailee to require the entity to impound any property in its possession

[¶21] The matters on appeal are convictions relating to offenses in which no money was seized. We therefore conclude that we do not have jurisdiction to consider Witham's arguments regarding the forfeiture because no money was seized in the matters in this appeal.

## B. Specific Unanimity

[¶22] Witham contends that a specific-unanimity instruction should have been given with respect to Counts 1, 2, 5, 6, 8, 11, 13, and 15.[22]

[¶23] Because Witham's trial counsel did not request a specific-unanimity instruction, we review the question of whether the court erred in its jury instructions for obvious error. *See State v. Haji-Hassan*, 2018 ME 42, ¶ 18, 182 A.3d 145. "Obvious error occurs when jury instructions, viewed as a whole, are affected by highly prejudicial error tending to produce

---

or control and not to release it except upon further order of the court. Process for seizure of the property may issue only upon a showing of probable cause that the property is subject to forfeiture under section 5821." Section 5822(6) further provides that "seizure without the process may be made when . . . [t]here is probable cause to believe that the property has been used or is intended to be used in violation of any criminal law of this State, any other state or the United States." Witham was indicted for multiple counts of unlawful trafficking in scheduled drugs, and the criminal forfeiture was commenced by the same indictment, and therefore the process outlined in section 5822 was not needed for the seizure of Witham's money. *See* 15 M.R.S. §§ 5822(6), 5826(3).

[22] Counts 1, 2, 5, 6, 8, 11, 13, and 15 are charges of the following offenses, respectively: kidnapping the victim with a dangerous weapon (Class A); kidnapping the victim's child (Class A); aggravated assault of the victim (Class A); criminal restraint of the victim with a dangerous weapon (Class B); domestic violence criminal threatening with a dangerous weapon (Class B); domestic violence assault of the victim (Class C); possession of a firearm by a prohibited person (Class C); and endangering the welfare of a child with the use of a dangerous weapon (Class C).

manifest injustice." *State v. Chase*, 2023 ME 32, ¶ 13, 294 A.3d 154 (quotation marks omitted). Obvious error requires "(1) an error, '(2) that is plain, (3) that affects substantial rights, and . . . (4) that . . . seriously affects the integrity, fairness, or public reputation of judicial proceedings.'" *Id.* (quoting *State v. Lajoie*, 2017 ME 8, ¶ 13, 154 A.3d 132). In determining whether the court erred, we evaluate the jury instructions in their entirety and consider the potential for juror misunderstanding and "whether the instructions informed the jury correctly and fairly." *Id.* (quotation marks omitted).

[¶24] Witham argues that the trial court committed obvious error by neglecting to give a specific-unanimity instruction, which resulted in convictions that "were likely the result of numerous patchwork jury-votes rather than unanimity about which incidents were actually committed."

[¶25] "A specific unanimity instruction explains to jurors that they are required to unanimously agree that a single incident of the alleged crime occurred that supports a finding of guilt *on a given count*. Thus, if the State alleges multiple instances of the charged offense, any one of which is independently sufficient for a guilty verdict as to that charge, specific unanimity instructions are proper." *State v. Russell*, 2023 ME 64, ¶ 25, 303 A.3d 640 (emphasis added) (quotation marks omitted). The court should instruct the

jury on specific unanimity upon request from a party or on its own motion if the State alleges multiple incidents that could each independently support a finding of guilt on a certain charge. *See Hanscom*, 2016 ME 184, ¶ 16, 152 A.3d 632; *State v. Villacci*, 2018 ME 80, ¶ 1 n.1, 187 A.3d 576 (noting that the court erred by not giving a specific-unanimity instruction even though neither the defendant nor the State requested it).

### 1. Counts 1, 2, and 6

[¶26]  We first address Witham's arguments that on Counts 1 (kidnapping with a dangerous weapon), 2 (kidnapping), and 6 (criminal restraint with a dangerous weapon) there was evidence of "seven separate incidents that jurors might have felt constitute 'restraint'" for both the victim and the victim's child.

[¶27]  As a threshold matter, Witham does not argue on appeal that Count 1, kidnapping with a dangerous weapon, and Count 6, criminal restraint with a dangerous weapon, should be merged, nor did either party raise this issue before the trial court. While we generally confine our review "to those issues which have been identified and briefed by the parties," we "will notice an obvious error whether or not it is brought to the attention of the trial or appellate court" when "the defendant's constitutional right to a fair and

20

impartial trial is implicated." *See State v. Rusher*, 468 A.2d 1008, 1009 (Me. 1983) (emphasis and quotation marks omitted). Therefore, we initially review for obvious error any failure to merge duplicative counts. *See id.*; *Chase*, 2023 ME 32, ¶¶ 20-21, 294 A.3d 154.

[¶28] It is obvious error to punish a defendant twice for the same offense. *See Chase*, 2023 ME 32, ¶¶ 20-21, 294 A.3d 154. *Blockburger v. United States* provides that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932). "'If each statutory provision requires a unique proof of fact, the *Blockburger* test is satisfied and there is no double jeopardy violation . . . .'" *Chase*, 2023 ME 32, ¶ 22, 294 A.3d 154 (quoting *Ayotte v. State*, 2015 ME 158, ¶ 14, 129 A.3d 285). Here, we note that both Count 1 and Count 6 allege that Witham "knowingly restrain[ed] [the victim] with the use of a dangerous weapon, a firearm,"[23] but Count 1 alleges the additional element of the intent to terrorize. *Compare* 17-A M.R.S. § 301(1)(A)(4) *with* 17-A M.R.S. § 302(1)(B)(1) (providing that kidnapping requires intent to terrorize—among other alternatives—but that criminal

---

[23] As noted above, the jury was not persuaded that Witham used a firearm.

restraint does not); *see Chase*, 2023 ME 32, ¶ 22, 294 A.3d 154. Because Count 1 requires a proof of fact that Count 6 does not but Count 6 does not require a proof of fact that Count 1 does not, the *Blockburger* test is not satisfied and Count 6 is a lesser-included offense of Count 1, and the court erred in not merging the lesser-included offense (Count 6) into the greater offense (Count 1). *See Chase*, 2023 ME 32, ¶¶ 23, 25, 294 A.3d 154; *Blockburger*, 284 U.S. at 304. To correct the constitutional double-jeopardy injury while preserving multiple verdicts, we remand to the trial court for "'resentencing on a single conviction reflecting the merged counts.'" *Chase*, 2023 ME 32, ¶ 26, 294 A.3d 154 (quoting *State v. Armstrong*, 2020 ME 97, ¶ 15, 237 A.3d 185).

[¶29] Because we remand to the trial court to merge Count 6 into Count 1, we need not address Witham's argument for a specific-unanimity instruction regarding Count 6 and instead turn to Count 1. For Count 1, kidnapping with a dangerous weapon, Witham was charged with knowingly restraining the victim with the use of a dangerous weapon with the intent to terrorize the victim. The court instructed the jury on the definition of "restrain" as follows:

> Restrain means to restrict substantially the movements of another person without that other person's consent or other lawful authority by removing the other person from the other person's residence or place of business or from a school, moving the other

> person a substantial distance from the vicinity where the other person was—is found, confining the other person for a substantial period, either in the place where the restriction commences or in a place to which the other person has been moved.

The jury found Witham guilty of kidnapping the victim with a dangerous weapon but did not find that the dangerous weapon was a firearm. The only item that the evidence showed was used in the course of the kidnapping that was a dangerous weapon but not a firearm was a baseball bat. Therefore, there is only one instance of conduct that the jury could unanimously identify was true beyond a reasonable doubt and it was thus not obvious error to fail to give a specific-unanimity instruction on Count 1. *See Russell*, 2023 ME 64, ¶ 28, 303 A.3d 640.

[¶30] Count 2 alleges kidnapping of the victim's child and does not allege the use of a dangerous weapon. The conduct alleged is thus entirely separate, involving a different victim than the one in Counts 1 and 6. During closing statements, the State described the restraint of the victim and her child to the jury: "So the kidnapping starts in the Witham residence where they're held in the bedroom and not allowed to leave. It then continues when Mr. Witham tells them get in the car and stay in the car. So you add that period of time on. And then it continues again where he orders them out of the car and says you cannot leave the garage. So you've got three places in which there's continuity of

confinement." The jury heard testimony from the victim and the victim's child regarding Witham's constant threats to the victim and her child for them to remain on the property or he would kill them, which all occurred in one extended incident on or around June 24, 2020.

[¶31] The incident described by the State and the evidence provided to the jury all indicate that the kidnapping of the victim's child occurred as a "single, continuous, incident" occurring on or about June 24, 2020, at Witham's residence. *See State v. Rosario*, 2022 ME 46, ¶ 35, 280 A.3d 199.[24] The evidence does not describe multiple discrete scenarios of restraint, as Witham argues, but instead describes one continuous episode during which the victim's child was prevented from leaving the residence.

[¶32] The facts here are similar to the facts in *State v. Pelletier*, in which we held that the evidence sufficiently supported a finding that the defendant restrained the victim for a substantial period, despite arguments that the defendant instead committed separate assaults. *See* 2023 ME 74, ¶¶ 24-25, 306

---

[24] We do not interpret *Rosario* to apply only to cases in which there is a single-count indictment. While *Rosario* involved one single charge of aggravated trafficking of scheduled drugs, the greater context of our jurisprudence on specific unanimity involves whether a jury can unanimously agree that one of multiple incidents "of the alleged crime occurred that supports a finding of guilt *on a given count*," implying the possible presence of other charges. 2022 ME 46, ¶ 34, 280 A.3d 199 (emphasis added) (quotation marks omitted). Thus, *each* count is analyzed to determine whether multiple incidents are alleged that could apply to that count, or whether only one continuous incident or one isolated incident is alleged for that count.

24

A.3d 614 (holding, in a challenge to the sufficiency of the evidence, that there was ample evidence in the record to support the court's finding). In *Pelletier*, the defendant restrained the victim for a substantial period because the restraint lasted "longer than the time necessary to commit the assault against" the victim and there were moments between assaults when the defendant "took discrete actions to control the victim's movement, such as when he told her to get out of the truck and go inside" that were part of the longer period of time. *Id.*; *cf. Russell*, 2023 ME 64, ¶ 32, 303 A.3d 640 (concluding that evidence of sexual contact on multiple occasions in different locations and on different days required a specific-unanimity instruction on a charge of unlawful sexual contact).

[¶33]  Other jurisdictions agree that a continuous incident—like what may occur with a kidnapping charge—does not require a specific-unanimity instruction. *See, e.g.*, *State v. Garcia-Martinez*, 546 P.3d 750, 760-61 (Kan. 2024) (holding that no unanimity instruction was needed because the actions described were not independent criminal acts occurring at different times or motivated by "fresh impulses" because the actions occurred during one morning and the victim was put in a car); *State v. Mundon*, 219 P.3d 1126, 1138 (Haw. 2009) (concluding that a series of threats and coercive conduct used to

sustain a kidnapping over a period of time does not require a unanimity instruction). We find these other states' authorities persuasive with respect to the circumstances in this case.

[¶34] Here, the jury could determine that the facts show a continuing course of conduct during which Witham issued a series of threats and used coercive conduct to restrain the victim's child, and not multiple independent crimes. Therefore, a specific-unanimity instruction was not required on Count 2, and the court did not err in its jury instructions on that count. *See Rosario*, 2022 ME 46, ¶ 35, 280 A.3d 199.

## 2. Counts 5 and 11

[¶35] Witham next argues that Counts 5 and 11 could each be proved with several different acts of abuse and that the several different acts alleged might have constituted "circumstances manifesting extreme indifference to the value of human life" as required to prove these counts. *See* 17-A M.R.S. § 208(1)(C). We turn first to Count 5. "[E]xtreme indifference to the value of human life" manifests through conduct that creates a reasonable likelihood of a serious or grave result, such as death or serious bodily injury. *See State v. Dodd*, 503 A.2d 1302, 1304-06 (Me. 1986). The circumstances that manifest

such conduct specifically include "the use of strangulation."  17-A M.R.S. § 208(1)(C) (2026).[25]

[¶36]  Here, there is only one alleged instance of conduct that "creates a reasonable likelihood of a serious or grave result, such as death or bodily injury"—when Witham strangled the victim.  Witham argues that there were four separate instances of strangulation that the jury could have found met the elements of Count 5.  However, the evidence demonstrates a continuing course of conduct and one continuous episode of strangulation that does not call for a specific-unanimity instruction.  *See Rosario*, 2022 ME 46, ¶ 35, 280 A.3d 199.  The victim testified that Witham strangled her in the bedroom.  She testified that she "blacked out" during the strangling and could not specify how many times Witham strangled her but estimated "around four."  She also testified that Witham strangled her during a discrete period that was between the approximately ten to thirty minutes that they were in the house.  Though Witham may have strangled and released the victim multiple times, given the evidence it is reasonable for the jury to have concluded that such conduct occurred repeatedly over a short time, in the same location, without intervening events.  In other words, that it was a single continuous episode.

---

[25]  Section 208(1)(C) is incorporated by reference in 17-A M.R.S. § 208-D(1)(D), which is the basis for Count 5.

*See Rosario*, 2022 ME 46, ¶ 35, 280 A.3d 199; *cf. Russell*, 2023 ME 64, ¶ 32, 303 A.3d 640 (explaining that the victim's testimony recounted multiple different sexual acts at different times in different places, and that therefore the court should have given the jury a specific-unanimity instruction).

[¶37]  The other actions that Witham argues could have formed the basis for Count 5 are distinguishable from the circumstances contained in our case law regarding aggravated assault.  *See, e.g.*, *State v. Matthews*, 2018 ME 65, ¶¶ 6-7, 19, 185 A.3d 46.  Although Witham punched the victim in the face like in *Matthews*, the victim in *Matthews* was likely unconscious, and the defendant punched him repeatedly while he was on the ground, causing injuries that could have resulted in permanent impairment.  *Id*.  The facts in the present case are more like the facts in *Chase*, in which the defendant strangled the victim for a couple of minutes, dragged the victim out of the car, and slammed her face into the steering wheel.  2023 ME 32, ¶¶ 3-5, 294 A.3d 154.  We held that only the strangling could serve as the basis for the conviction of aggravated assault.  *Id*. ¶ 17; *see also State v. Perry*, 2017 ME 74, ¶¶ 7, 10, 159 A.3d 840 (noting that the defendant was charged with three categories of aggravated assault and only strangling the victim was alleged as violating 17-A M.R.S. § 208(1)(C), which

28

requires circumstances manifesting extreme indifference to the value of human life).

[¶38] Here, in addition to strangling the victim, Witham assaulted her in other ways. None of that conduct, however, carried the same likelihood of death or serious bodily injury. Because the strangulation is the only conduct that the jury could have considered on Count 5, there was no obvious error in failing to give a specific-unanimity instruction. *See Chase*, 2023 ME 32, ¶ 17, 294 A.3d 154.

[¶39] We do not address Witham's argument on Count 11 because the court merged Count 11 into Count 5**.** *See supra* n.17. However, we note that the merger was not reflected at sentencing, nor were the counts merged in the judgment and commitment or the docket record.[26] Because that was error given the court's earlier merger order, we remand for resentencing consistent with the merger of Count 11 into Count 5. *See Chase*, 2023 ME 32, ¶ 26, 294 A.3d 154.

---

[26] At sentencing, the court also sentenced Witham to two years of imprisonment on Count 11 running concurrently with the sentence on Count 5, but the docket record reflects a sentence of five years of imprisonment on Count 11 running concurrently with the sentence on Count 5.

### 3.    Counts 8, 13, and 15

[¶40]  Finally, Witham argues that multiple alleged instances of threats could support a conviction on Count 8 (domestic violence criminal threatening with a dangerous weapon), evidence of multiple different firearms could support Count 13 (possession of a firearm by a prohibited person), and multiple alleged acts of endangerment to the "health, safety, or welfare" of the victim's child could support Count 15 (endangering the welfare of a child with the use of a dangerous weapon).  For Count 8, Witham is correct that the evidence alleges that he used a dangerous weapon to put the victim in fear of imminent bodily injury on multiple occasions.  However, the jury did not find that the dangerous weapon was a firearm, and the only item that Witham used to threaten the victim that was not a firearm was a baseball bat.  There is only one instance of threatening involving Witham's use of a baseball bat that the jury could unanimously identify was true beyond a reasonable doubt, and therefore it was not obvious error to fail to give a specific-unanimity instruction on Count 8.  *See Russell*, 2023 ME 64, ¶ 28, 303 A.3d 640.

[¶41]  The same analysis applies to Count 15, endangering the welfare of a child with the use of a dangerous weapon.  The jury found Witham guilty of Count 15 but did not find that the dangerous weapon was a firearm; the only

dangerous weapon used to endanger the victim's child was the baseball bat. Therefore, it was not obvious error to fail to give a specific-unanimity instruction on Count 15. *See id.*

[¶42] Turning to Count 13, possession of a firearm by a prohibited person, we hold that a specific-unanimity instruction was not required. Witham is correct that the State presented evidence of multiple firearms recovered from his residence during the execution of the search warrant the next morning. Although Witham testified that he did not have a gun during this time, the jury did not find his testimony credible.

[¶43] Witham argues that the jury had to unanimously agree on the specific firearm he possessed. His argument fails, however, because possession of a particular firearm is not an element of the crime. *See* 15 M.R.S. § 393(1).[27] Witham may be found guilty so long as the jury unanimously agrees that he possessed a firearm, regardless of whether they agree on which one. *See, e.g.*, *United States v. Verrecchia*, 196 F.3d 294, 298-99 (1st Cir. 1999) (holding that possession of a particular firearm by a felon is not an element of the crime and thus a specific-unanimity instruction is not required when there are multiple

---

[27] Title 15 M.R.S. § 393(1) provides in pertinent part, "A person may not *own, possess or have under that person's control* a firearm, unless that person has obtained a permit under this section, if that person . . . [h]as been convicted of committing . . . [a] crime in this State that is punishable by imprisonment for a term of one year or more." (Emphasis added).

firearms involved); *see also State v. Schooley*, 2025 ME 84, ¶ 23, 345 A.3d 78 ("[T]he specific unanimity requirement does not mean that the jurors must agree on every detail of the State's proof. . . . This rule does not require that each bit of evidence be unanimously credited or entirely discarded, but it does require unanimous agreement as to the nature of the defendant's violation, not simply the fact that a violation has occurred." (quotation marks omitted)); *State v. Hurd*, 2010 ME 118, ¶ 29 n.8, 8 A.3d 651 (noting that "if a crime may be committed by more than one means or method," the jury need be unanimous only as to each element of the crime and not as to the specific methods or supporting proof of each element). Therefore, no specific-unanimity instruction was needed on Count 13, and it was not obvious error to fail to give a specific-unanimity instruction.

### 4. Summary

[¶44] We conclude that no specific-unanimity instruction was needed for the jury to unanimously convict Witham on Counts 1, 2, 5, 8, 13, and 15. However, the court erred by not merging Count 6, the lesser-included offense, with Count 1, and by sentencing Witham on Count 11 after previously merging it with Count 5. Therefore, we remand for resentencing reflecting the merged counts.

## C.    Mental-Condition Examination

[¶45]  Under 15 M.R.S. § 101-D(3), "[t]he court may for good cause shown order that the defendant be examined to evaluate the defendant's mental condition . . . . Upon motion by the defendant or by the State or upon its own motion[,] a court having jurisdiction in any criminal case may for cause shown order that the defendant be examined by the State Forensic Service for evaluation with respect to any issue necessary for determination in the case, including the appropriate sentence."

[¶46]  Witham argues that the trial court erred by denying his motion for a mental-condition examination pursuant to 15 M.R.S. § 101-D. Witham contends that defendants have a constitutional right to have a court consider any relevant mitigating evidence; in this case, the relevant mitigating evidence that Witham sought to have the court consider was that he had a history of "blackouts." *See Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982). The State argues that Witham failed to demonstrate good cause for a mental-condition examination because the only rationale he provided was his family history of blackouts and he did not argue during the trial or otherwise that he experienced a blackout during the events at issue in this case.

[¶47] Here, Witham's explanation for his request to have a mental-condition examination was, at best, meager; he and his trial counsel described "his history of family blackouts" and expressed concern that "he may have gaps in his memory" so that a mental-condition examination "might help explain in his mind how all this stuff fit together and might be beneficial to the [c]ourt in coming up with sentencing and how all this stuff happened." The court properly denied the motion because Witham "testified quite clearly and vividly about what happened," and therefore there was no factual basis for concern that he had blacked out during the incidents at issue in this case. Therefore, Witham did not show good cause for a mental-condition examination, and we conclude that the court did not err in denying the motion for a mental-condition examination.

## D. Sentencing Factors

### 1. Firearms

[¶48] Witham argues that the sentencing court unlawfully increased his sentence by finding that there were firearms involved in the offenses, even though the jury was not persuaded beyond a reasonable doubt that the offenses were committed with the use of a firearm. Witham further contends that the sentencing court abused its sentencing power by overriding the jury's findings

that firearms were not involved in Counts 1, 6, 8, and 15. The State argues that there is no way for us to know on the record provided what weight the sentencing court assigned to the presence of firearms and that the jury did in fact find Witham guilty of Count 13, Class C possession of a firearm by a prohibited person.

[¶49] As stated above, a court considers the particular nature and seriousness of the offense in determining the basic sentence. *Hewey,* 622 A.2d 1151, 1154 (Me. 1993); 17-A M.R.S. § 1602(1)(A) (2026). For example, in a 2019 murder case, in determining the basic sentence, the sentencing court considered that the defendant possessed a firearm when he was prohibited from doing so, and we concluded that the sentencing court's consideration of this factor was not error. *State v. Lord*, 2019 ME 82, ¶¶ 19-20, 34-35, 208 A.3d 781.

[¶50] Here, the sentencing court stated during its determination of the basic sentence, "There were firearms involved, with two firearms recovered. One was a shotgun that was sawed off. One was a handgun and Mr. Witham was prohibited from possessing firearms." Witham correctly contends that the jury did not find beyond a reasonable doubt that the dangerous weapon used in Counts 1, 6, 8, and 15 was a firearm. However, contrary to Witham's

contention, the sentencing court did not override this finding but merely referred to the fact that Witham possessed firearms despite being prohibited from doing so, which was one of the counts on which the jury convicted him, Count 13.[28]

[¶51]  The court has an "obligation to make its own findings relevant to the sentence, by a preponderance of the evidence, based on whatever information the court deemed reliable." *State v. Carrillo*, 2021 ME 18, ¶ 44, 248 A.3d 193.  The court may exercise this discretion so long as the sentencing is within the prescribed statutory range. *Libby v. State*, 2007 ME 80, ¶¶ 6, 10, 926 A.2d 724.  The evidence presented amply supports the finding that firearms were recovered from Witham's toolbox, and the court set the sentence at twenty-four years, decidedly on the upper end of the scale, but still below the thirty-year maximum for the lead count, Count 5.  *See* 17-A M.R.S. § 1604(1)(A) (2026).

[¶52]  Therefore, we conclude that the sentencing court did not err in considering Witham's prohibited possession of firearms as part of the determination of the basic sentence because it was other conduct that was germane to the *Hewey* step-one analysis of the particular nature and

---

[28]  In discussing the firearms, the court refers to the "two firearms recovered," which is directly supported by law enforcement testimony at trial.

36

seriousness of the offense. *See Lord*, 2019 ME 82, ¶ 34, 208 A.3d 781; *Hewey*, 622 A.2d at 1154.

### 2. Age

[¶53] "We review the sentencing court's determination of the basic sentence de novo for misapplication of legal principles and its determination of the maximum sentence for abuse of discretion." *Chase*, 2023 ME 32, ¶ 28, 294 A.3d 154 (alteration and quotation marks omitted).

[¶54] Witham argues that the sentencing court improperly and unlawfully increased his sentence because he was forty-four years old at the time of the offense. Witham contends that increasing his sentence based on age is not rationally related to a legitimate state interest and therefore violates the Equal Protection Clause of the Fourteenth Amendment. The State argues that the sentencing court properly individualized Witham's sentence by considering his age in the context of his prior convictions and character.

[¶55] In the second step of the *Hewey* analysis, the sentencing court must consider mitigating and aggravating factors particular to that offender: "In determining the appropriate degree of mitigation or aggravation of an offender's basic period of incarceration[,] the court may consider any evidence that is factually reliable and relevant." *Hewey*, 622 A.2d at 1154. The court then

uses these factors to determine the maximum sentence. "[I]n examining aggravating and mitigating factors, a court may also consider the following: whether a defendant has an antisocial, hostile, unstable, or psychopathic character, [and] the defendant's age, intelligence, and prior criminal history . . . ." *State v. Koehler*, 2012 ME 93, ¶ 35, 46 A.3d 1134 (citation omitted).

[¶56] "Youthful age is frequently considered a mitigating factor, but we note that the absence of a mitigating factor does not mean it is an aggravating factor. If age is not a mitigating factor, there should be something specific to the facts of the case or the characteristics of the defendant to be able to consider age to be an aggravating factor." *State v. Woodard*, 2025 ME 32, ¶ 22, 334 A.3d 667.

[¶57] Here, the sentencing court considered Witham's age in the context of his prior criminal conduct: "He's a grown adult. If he had issues of this type he should have addressed them long before now, and this appears to be a continuing pattern of behavior for at least 15 years." Since 2005, Witham has violated three protection orders and committed two domestic violence offenses. The sentencing court appears to have connected Witham's age and prior convictions with the idea that he should have been rehabilitated by this time in his life. While that may be a logical conclusion to draw, sentencing

courts should be cautious about giving too much independent weight to the factor of age in circumstances like this because it could result in an overemphasis on a defendant's criminal history as an aggravating factor.

[¶58]  In this instance, though, the court considered other aggravating factors, including the impact on the victims, which the court stated was significant and widespread.  *See Woodard*, 2025 ME 32, ¶ 23, 334 A.3d 667. Therefore, we cannot say that the court abused its discretion in considering age as an aggravating factor.

### 3.    Acceptance of Responsibility

[¶59]   Witham argues that the sentencing court impermissibly and unlawfully increased his sentence and violated his right to refrain from self-incrimination by determining that Witham's not accepting responsibility in his trial testimony or allocution at sentencing was an aggravating factor.  The State argues that the record supports that the sentencing court properly considered Witham's trial testimony in the context of determining whether he genuinely accepted responsibility or showed remorse.

[¶60]  "We review de novo a claim that a constitutional violation has occurred at sentencing."  *State v. Moore*, 2023 ME 18, ¶ 23, 290 A.3d 533.

[¶61]  While taking responsibility or the presence of remorse may be a mitigating factor, a defendant's exercise of her or his right to a trial cannot by itself constitute the aggravating factor of failure to accept responsibility. *See Moore*, 2023 ME 18, ¶ 25, 290 A.3d 533 ("[S]imply exercising the right to trial can never be cited as an aggravating factor."). However, "'[t]here is a difference between increasing a defendant's sentence because the defendant chooses to exercise the right to trial and to testify[] and considering a defendant's conduct at trial and information learned at trial . . . in determining the genuineness of a defendant's claim of personal reform and contrition.'" *State v. Ellis*, 2025 ME 56, ¶ 25, 339 A.3d 794 (quoting *State v. Grindle*, 2008 ME 38, ¶ 19, 942 A.2d 673).[29]  A defendant's testimony at trial or allocution at sentencing may provide the "affirmative evidence in the record" needed to support consideration of a failure to accept responsibility as an aggravating factor. *Id*. ¶ 26.

[¶62]  Here, Witham exercised his right to have a trial, elected to testify, and was ultimately found guilty on several counts.  The court did not consider Witham's having a trial as an aggravating factor; indeed, the court specifically stated it "cannot find Mr. Witham at fault for having a trial."  The court then

---

[29]  We note, as we did in *Ellis*, that "the fact that a particular factor can be considered mitigating does not mean that the *absence* of that factor is necessarily aggravating."  2025 ME 56, ¶ 24, 339 A.3d 794.

noted that Witham testified, and the jury found him guilty and therefore not credible, which the court relied on as an example of Witham's unwillingness to accept responsibility for his actions. *See id.*; *Grindle*, 2008 ME 38, ¶ 26, 942 A.2d 673.

[¶63]  Moreover, the court did not rely solely on the fact that the jury did not find Witham's testimony credible.  The court further stated that Witham's allocution did not show an acceptance of responsibility.  Instead, "[i]t was apologizing for making [the victim and victim's child] go through the trial, which he blames others for not . . . accepting the offer that he said he would accept to . . . resolve this case." Consideration of such on-the-record expressions is permissible when a sentencing court assesses whether a defendant fails to accept responsibility for his actions and determines whether it is an aggravating factor.  *See Ellis*, 2025 ME 56, ¶ 26, 339 A.3d 794.  Therefore, we conclude that the sentencing court properly considered the affirmative evidence of Witham's failure to accept responsibility as an aggravating factor.

The entry is:

> Remanded for merger and resentencing consistent with this opinion on Counts 1 and 6 and Counts 5 and 11, and for the trial court to correct the docket in docket number HANCD-CR-2020-816 to reflect accurately the

date of Witham's conviction.  Judgment affirmed
in all other respects.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Jeffrey Witham Jr.

Toff Toffolon, Dep. Dist. Atty. (orally), Office of the District Attorney, Ellsworth, for appellee State of Maine

Hancock County Unified Criminal Docket docket numbers CR-2020-816 and CR-2020-618
FOR CLERK REFERENCE ONLY